UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLOYD ROSE,
                          Petitioner,

-v-

UNITED STATES OF AMERICA,
                          Respondent.

15-CR-594 (JPO)

19-CV-3974 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Floyd Rose petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Civ. Dkt. No. 1 ("Pet.").) Proceeding *pro se*, Rose challenges the legality of the sentence entered against him following his plea of guilty to one count of Hobbs Act robbery under 18 U.S.C. § 1951. (*See* Crim. Dkt. No. 69.) Rose argues that the Hobbs Act's jurisdictional element is so vague as to require construction in his favor under the rule of lenity, that his counsel provided ineffective assistance by failing to raise this argument in his defense, and that he is actually innocent of the charge against him. For the reasons that follow, Rose's petition is denied.[1]

**I.    Background**

      On June 24, 2016, Floyd Rose pleaded guilty to one count of robbery affecting interstate commerce pursuant to 18 U.S.C. § 1951 ("Hobbs Act robbery"). (Crim. Dkt. No. 39 ("Plea Tr.") at 9:3, 12:22–13:4.) This charge stemmed from an incident on June 10, 2015, in which Rose and a second person, James Arberry, forced an individual to withdraw funds from a Citibank ATM and give the money to them. (Plea Tr. at 13:2–4.) Rose was initially charged with three counts

---

[1] Rose also filed a motion to expedite review of his petition on November 21, 2019. (Civ. Dkt. No. 8.) In light of this opinion, Rose's motion is denied as moot.

1

of bank robbery by force or violence under 18 U.S.C. § 2113, in addition to the count of Hobbs Act robbery, in connection with the June 10, 2015 incident and separate incidents on January 8 and July 10, 2015. (Dkt. No. 21.) Pursuant to a plea agreement with the Government, he pleaded guilty to only the Hobbs Act robbery charge. (Plea Tr. 9:3–13.) During the plea colloquy, Rose allocuted that he had caused a person to withdraw money from an ATM machine, taking their property by force. (Plea Tr. 13:2–4.) The Government then proffered that the bank from which the money had been withdrawn engaged in interstate commerce. (Plea Tr. 13:12–14.) This Court accepted Rose's guilty plea. (Plea Tr. 14:6–8.)

Two months after the Court accepted his guilty plea, in August 2016, Rose requested a new attorney and moved to withdraw his guilty plea. (Crim. Dkt. Nos. 42, 50.) Rose was given a new court-appointed new attorney, David Touger. (Crim. Dkt. No. 46 at 9:23–10:9.) After an evidentiary hearing, this Court declined to allow Rose to change his plea because he had failed to show that his first attorney, Robert Soloway, had coerced him into accepting the plea or that his plea was in any way not "knowing, voluntary, and intelligent" as required by *Johnson v. Zerbst*, 304 U.S. 458 (1938). (*See* Crim. Dkt. No. 64 at 57:17–21.)

With Rose's guilty plea still in effect, the parties stipulated to a Sentencing Guidelines range of 77–96 months' imprisonment and three years' supervised release. (Crim. Dkt. Nos. 66, 67.) On March 1, 2017, the Court ultimately imposed a below-Guidelines range sentence of 60 months' imprisonment and three years' supervised release, identical to the sentence imposed on Rose's co-defendant, James Arberry. (Crim. Dkt. Nos. 27, 69.)

On March 9, 2017, Rose filed a notice of appeal. (Crim. Dkt. No. 71.) Represented by attorney Devin McLaughlin, Rose argued to the Second Circuit that this Court erred in refusing to allow him to withdraw his guilty plea because his robbery was insufficiently connected to

interstate commerce to satisfy the elements of the Hobbs Act. *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018). The Second Circuit affirmed this Court's decision, holding that Hobbs Act robbery requires only a *de minimis* effect on interstate commerce, and that forcing an individual to withdraw money from an ATM of a bank that engages in interstate commerce meets that standard. *Id.* at 86–87.

Rose subsequently filed a petition for a writ of certiorari to the United States Supreme Court, which was denied on January 7, 2019. *Rose v. United States*, 139 S. Ct. 796 (2019). Rose now seeks post-conviction relief under 28 U.S.C. § 2255.

## II.     Legal Standard

A prisoner in federal custody may bring a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

In ruling on a § 2255 motion, the court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). Further, "[i]t is well-settled that once a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack." *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980) (citation and internal quotation marks omitted). This rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Mui*

*v. United States*, 614 F.3d 50, 53 (2010) (formatting altered). The Court may reconsider the issue only "where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *Chin,* 622 F.2d at 1092.

## III. Discussion

Rose attacks his sentence on three grounds. He contends first that the "interstate commerce" element of the Hobbs Act is so ambiguous as to require construction in his favor under the rule of lenity. (Pet. at 12.) Second, he argues that all three of his counsel were ineffective in the plea, sentencing, and appeal stages of his case. (Pet. at 13.) Finally, he argues that he is actually innocent of the additional bank robbery charges under 18 U.S.C. § 2113 dismissed at sentencing, and that his innocence of those charges must lead to the overturning of his Hobbs Act conviction. (Pet. at 19.) The Court addresses each of these arguments in turn.

### A. Hobbs Act

Rose's first claim, that the Hobbs Act's jurisdictional element is too ambiguous to be enforceable under the rule of lenity, is essentially a repackaged version of his claim in *Rose*: He argues that *United States v. Lopez*, 514 U.S. 549 (1995), requires the jurisdictional element to be read to encompass only activities that have a "substantial effect" on commerce and that the Second Circuit's *de minimis* standard creates ambiguity. (*See* Pet. at 13–18.) That claim was essentially already considered and rejected by the Second Circuit. *See Rose*, 891 F.3d at 86 ("It is the law in our circuit that if the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under the Hobbs Act." (quoting *United States v. Silverio*, 335 F.3d 183, 186 (2d Cir. 2003) (per curiam) (alterations and internal quotation marks omitted)). The Circuit's interpretation of the Hobbs Act on appeal, using Supreme Court and circuit precedent post-

4

*Lopez*, makes clear that it is not ambiguous, and thus the rule of lenity does not apply. *Cf. United States v. Bass*, 404 U.S. 336, 348 (setting aside a criminal conviction under the rule of lenity only when charged conduct is not "plainly and unmistakably" a crime).

The "mandate rule" prevents an incarcerated person from collaterally attacking his sentence when he has already tried and failed to attack it directly on the same grounds. *See, e.g.*, *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001). Further, "[t]he mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Mui*, 614 F.3d at 53. The decision in Rose's direct appeal was an implicit resolution of the argument raised in the petition before this Court. Thus, the mandate rule forbids this Court from subsequently considering it.

Even if this Court were able to reconsider Rose's argument on the merits, it would be bound by the Second Circuit's unambiguous interpretation of the Hobbs Act, prohibiting robberies "[that] produce[] any interference with or effect upon interstate commerce, whether slight, subtle, or even potential." *Rose*, 891 F.3d at 86. As the Circuit held, when Rose forced individuals to withdraw money from a bank that engages in interstate commerce, his conduct met that definition. *Id.* ("We have found the jurisdictional element satisfied when the victim of a robbery is an individual . . . where the defendant targeted the assets of a business engaged in interstate commerce rather than an individual.")

Accordingly, Rose's argument that the Hobbs Act's jurisdictional element is so ambiguous as to require vacatur of his sentence under the rule of lenity is both procedurally barred and meritless, and so must fail.

### B. Ineffective Assistance of Counsel

Rose's second claim is that he received ineffective assistance from all three of his counsel. These claims are either procedurally barred by the mandate rule or substantively without merit.

Rose first argues that all three of his counsel at the plea, sentencing, and appeal stages of his case were ineffective for failing to raise the argument either that Rose's conduct failed to meet the interstate commerce element of the statute or that the interstate commerce element was so ambiguous as to warrant invocation of the rule of lenity. (*See* Pet. at 29–31, 36–37.) However, these arguments *were* raised in Rose's direct appeal and decided both explicitly (as to the jurisdictional element) and implicitly (as to the ambiguity of the statute) by the Second Circuit. *Rose*, 891 F.3d at 86. Since the merits of these arguments were effectively adjudicated on appeal, "repackaging [them] as ineffective assistance claims cannot circumvent the mandate rule or entitle [petitioner] to habeas relief." *United States v. Peirce*, 2011 WL 4001071, at *4 (S.D.N.Y. Aug. 30, 2011); *see also Mui*, 614 F.3d at 57 (holding that ineffective assistance claims cannot be raised in a § 2255 proceeding if they are barred by the mandate rule).

Second, Rose argues that Soloway provided ineffective assistance at the plea stage in failing to object to the Government's inclusion of a *mens rea* of "knowingly" in the elements of the charged offense. (Pet. at 27.)

To establish a claim of ineffective assistance of counsel, a petitioner must show: (1) that his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and (2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984). This standard is "highly demanding." *Bennet v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (quoting *Kimmelman v. Morrison*, 477 U.S. 365,

382 (1986)). "The [ineffective assistance of counsel] claim must be rejected if the [petitioner] fails to meet either the performance prong or the prejudice prong." *Id.*

When assessing an attorney's performance under *Strickland*, there is a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. "[T]he failure to make a meritless argument" is such a strategic choice, and "does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

Rose argues that Soloway provided ineffective assistance in failing to raise the argument that *Elonis v. United States*, 135 S. Ct. 2001 (2015), holds that the addition of a *mens rea* element to a criminal statute that contains none is a violation of the due process rights of a criminal defendant. (Pet. at 27.) *Elonis* in fact stands for the opposite proposition: that criminal statutes *must* be read to include a *mens rea* element even if none is explicit. *Elonis*, 135 S. Ct. at 2009–2010. Thus, Rose's argument fails the performance prong of the *Strickland* inquiry. Counsel act "reasonably" when they decide not to raise a meritless argument that is contrary to well-settled law. *See Diaz v. United States*, 2010 WL 1221887, at *3 (S.D.N.Y. Mar. 29, 2010) ("[D]efense counsel's failure to raise a constitutional challenge to mandatory minimum sentences — which are unquestionably binding statutory authority on the Court — cannot be deemed representation that fell below an objective standard of reasonableness." (internal quotation marks omitted)); *see also Kirsh*, 54 F.3d at 1071 ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance.").

Thus, Rose has failed to make a showing sufficient to warrant relief on the claim of ineffective assistance by any of his counsel.[2]

C. **Actual Innocence**

Rose's final argument is that he is actually innocent of the additional bank robbery charges under 18 U.S.C. § 2113 — charges to which he did not plead guilty and which were dismissed at his sentencing. He asserts that since the evidence for the dismissed § 2113 charges is the same as the evidence for the charge of Hobbs Act robbery to which he ultimately pled guilty, his actual innocence of bank robbery leads to the inference that he is also innocent of Hobbs Act robbery. (*See* Pet. at 19–25.)

In the first place, because the bank robbery charges were dismissed, Rose's asserted innocence of those charges is irrelevant. He was not convicted of or sentenced on those charges. Nor would innocence on those charges necessarily entail innocence on the Hobbs Act robbery charge. But even assuming that an actual innocence claim on the bank robbery charge has salience, Rose's argument fails.

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To give rise to a claim of actual innocence, Rose would have to "demonstrate that, 'in light of all the evidence . . . it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). Rose has provided no such evidence. His claim of innocence is premised on an assertion that forcing an individual to withdraw money from a bank's ATM does not "target the

---

[2] To the extent that Rose raises arguments that Soloway coerced him and so his plea was not "knowing, voluntary, and intelligent," that argument was considered and rejected by this court after a hearing. (*See* Crim. Dkt. No. 64.) Rose has asserted no legal ground as to why the ruling by this Court after that hearing should be set aside. Accordingly, the Court will not revisit the knowing or voluntary nature of Rose's guilty plea.

8

assets" of the bank and so is not "bank robbery." He argues that because his robbery was of an individual, and accordingly had no connection to interstate commerce, his conduct failed to satisfy that element of the Hobbs Act. (Pet. at 24–25.) At bottom, this claim is identical to his legal innocence claim litigated and decided in his direct appeal. *Rose*, 891 F.3d at 86 ("We conclude that Rose's robbery falls within the scope of the Hobbs Act because Rose 'targeted the assets of a business engaged in interstate commerce rather than an individual.'" (quoting *United States v. Wilkerson*, 361 F.3d 717, 729 (2d Cir. 2004))). Such a claim, "premised on the same facts and rest[ing] on the same legal ground" as one already decided on direct appeal, cannot be reconsidered in a § 2255 motion. *See, e.g.*, *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009). As previously discussed, this Court is barred from considering such claims under the mandate rule. Accordingly, his actual innocence claim must fail.

## IV. Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. In light of this opinion, Petitioner's motion to expedite review of his petition is DENIED as moot.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2); *see Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

The Clerk of Court is directed to close Civil Docket Number 8 and close the case.

SO ORDERED.

Dated: December 3, 2019
      New York, New York

                                                 J. PAUL OETKEN
                                            United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*